# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

**NOHELLIA LONGORIA MENDOZA,**

    *Petitioner*,

v.                                                    **Case No. 5:26-CV-0728-JKP**

**KRISTI NOEM, Secretary, U.S. Department
of Homeland Security; et al.,**

    *Respondents*.

## ORDER GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241 and Petitioner's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 2). Respondents (sometimes referred to as "the Government") have filed a response (ECF No. 6) primarily contending that a recent decision from the Fifth Circuit Court of Appeals (*Buenrostro-Mendez v. Bondi*, ___ F.4th ___, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026)) requires denial of the Petition. Petitioner has filed a reply (ECF No. 8) contesting the broad application of *Buenrostro-Mendez* and supporting the petition. The petition is ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition for the reasons below. Consequently, the Court moots the motion.

## I. BACKGROUND

When she filed the instant habeas petition, Petitioner was in the custody of Respondents at the Dilley Immigration Processing Center. She has been detained since December 16, 2025, charged with being present in the United States without having been inspected or admitted under 8 U.S.C. § 1182(a)(6)(A)(i). Petitioner is a citizen of Mexico who last entered the United States without inspection in July 2013. She is married and the mother of four children who are all citizens of the United States.

Immigration and Customs Enforcement ("ICE") took Petitioner into custody on December 16, 2025, following a traffic stop in Palestine, Texas. Although ICE purported to detain her for full removal proceedings under 8 U.S.C. § 1229a, it did not initiate such proceedings by filing a Notice to Appear ("NTA") until January 2026, after Petitioner had been in custody for weeks. She has been detained without an opportunity to post bond or be released on other conditions. An immigration judge ("IJ") denied a bond hearing due to a Board of Immigration Appeals ("BIA") ruling, *In re Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), in which the BIA adopted a new policy regarding detention of noncitizens. Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). She is currently scheduled for a March 5, 2026 hearing before an IJ on the detained docket regarding relief from removal.

In the instant habeas petition, filed on February 4, 2026, Petitioner asserts that her detention violates (1) statutory provisions of the Immigration and Nationality Act (" INA"); (2) procedural due process under the Fifth Amendment; and (3) ICE's own regulations. Although Petitioner cites the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 500-596, 701-706, as a jurisdictional basis, she asserts no APA claim in this case. A primary argument is that her detention violates the plain language of the INA because § 1225(b)(2)(A) does not apply to individuals who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a) that (1) expressly applies to individuals who are charged as inadmissible for having entered the United States without inspection and (2) allows for release on conditional parole or bond. She contends that Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like her. While that may be a primary argument, Petitioner vigorously argues for relief under the other asserted habeas claims. This is especially so after Respondents invoke *Buenrostro-Mendez* as a basis for denying the petition. Her reply also presents a Fourth Amendment challenge.

2

## II. JURISDICTION

Jurisdiction is always an initial consideration because it concerns the Court's power over a case. *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Several sections of the INA, codified at 8 U.S.C ch. 12 § 1101 et seq., curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). In this case, however, Respondents do not assert any jurisdictional arguments. This Court, furthermore, has rejected their jurisdictional arguments in similar cases. *See*, *e.g.*, *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *2 (W.D. Tex. Oct. 21, 2025) (rejecting arguments under 8 U.S.C. § 1252(g), § 1252(a)(5), § 1252(b)(9), and § 1226(e)). Jurisdiction does not preclude review of the habeas claims raised in this case.

## III. ADMINISTRATIVE EXAUSTION

Respondents argue that Petitioner must exhaust administrative remedies before pursuing habeas relief. They explain that "approximately 3.74 million cases [are] pending in immigration court" and the federal courts are neither intended nor equipped to handle review of such magnitude. The Court could not agree more that the federal courts lack staff, time, and resources to handle the flood of habeas cases resulting from the current emphasis on immigration detention and removal. But it just as strongly recognizes that its duties and obligations include addressing immigration habeas petitions that assert unlawful detention in violation of the United States Constitution and federal law.

3

While exhaustion of administrative remedies may be a normal precursor to seeking habeas relief, *see Hinojosa v. Horn*, 896 F. 3d 305, 314 (5th Cir. 2018), this Court has previously found in a similar case that "*Hinojosa* is entirely inapt," *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *6 (W.D. Tex. Oct. 21, 2025). This Court reasoned that the petitioner's claim was "properly before the Court with no further requirement to exhaust administrative remedies" for two reasons: (1) the petition raised constitutional questions that were beyond the scope of administrative review and (2) the immigration appellate timeline exacerbates the petitioner's alleged injury of prolonged detention without a bond hearing. *Id*. at 6–7.

As recognized by the Fifth Circuit, while exhaustion is the general rule, "exceptions to this general rule" exist. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). "A failure to exhaust administrative remedies may be excused when the claimant advances a constitutional challenge unsuitable for determination in an administrative proceeding, or when the unexhausted remedy is plainly inadequate." *Id*. Federal courts have "the discretion to excuse the exhaustion requirement." *Id*. Here, the "constitutional challenges are not the types of questions" requiring exhaustion, and requiring Petitioner "to exhaust administrative remedies relating to same would be an exercise in futility." *Id*. Further, by Respondents' own interpretation of 8 U.S.C. § 1225, detention is mandatory without a bond hearing. Thus, the instant petition "does not present an exhaustion problem." *Zuniga v. Lyons*, ___ F. Supp. 3d ___, ___, No. 1:25-CV-221-H, 2025 WL 3755126, at *1 n.1 (N.D. Tex. Dec. 29, 2025); *accord Shi v. Lyons*, ___ F. Supp. 3d ___, ___, No. 1:25-CV-274, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025).

## IV. LEGAL STANDARD

The Supreme Court has referred to the "Great Writ" as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement" and "[r]eceived into our own law in the colonial

period." *Fay v. Noia*, 372 U.S. 391, 400 (1963), *overruled in part on other grounds*, *Wainwright v. Sykes*, 433 U.S. 72 (1977), and *abrogated in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). The importance of this Great Writ was not lost on the Justices of the Civil Rights era who recognized that the writ's

> function has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.

Id. at 401–02.

"Only in the rarest of circumstances has Congress seen fit to suspend the writ." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). Moreover, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Id*. (citing U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it")). Indeed, absent suspension, it is available to "challenge the legality of their detention" by "noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty," such as Guantanamo Bay. *Boumediene v. Bush*, 553 U.S. 723, 770 (2008). The Great Writ remains "a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (citing *Imm. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 590 U.S. 573, 580 (2020)).

The fundamental protection of habeas corpus applies to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Indeed, the Supreme Court in *Zadvydas* noted:

> It is well established that certain constitutional protections available to persons

inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id*. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id*.

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)); *accord Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (recognizing that habeas relief cannot "be had absent [an] allegation" that the petitioner "has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States"). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Villanueva*, 801 F. Supp. 3d at 696 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* at 697 (quoting 28 U.S.C. § 2243).

## V. ANALYSIS

Petitioner first argues that her continued detention by ICE is based on Respondents' novel reading of 8 U.S.C. § 1225(b)(2)(A), which was adopted by the Board of Immigration Appeals on September 5, 2025. *See In re Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025). This argument forms the basis for her claim that detention is improper under § 1225 and that § 1226 instead applies. Although this statutory claim received overwhelming support with courts across the country, including unanimous support with the judges of the Western District of Texas, the law recently changed. The Court finds no need to provide a lengthy string-cite to demonstrate the support because that support became irrelevant for present purposes on February 6, 2026, when the Fifth

Circuit Court of Appeals decided *Buenrostro-Mendez v. Bondi*, ___ F.4th ___, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).[1] Respondents invoke *Buenrostro-Mendez* in their response as binding precedent that requires denial of the instant habeas Petition. That position, however, takes *Buenrostro-Mendez* too far.

## A. Impact of *Buenrostro-Mendez*

When faced with the identical argument from the Government, one court agreed that *Buenrostro-Mendez* "requires denial" as to an asserted "statutory claim," while recognizing that "the *Buenrostro-Mendez* court did not reach the due process question." *Aleska Jamaly Bonilla Conforme v. De Anda-Ybarra*, No. EP-26-CV-263-KC, 2026 WL 381110, at *1–2 (W.D. Tex. Feb. 11, 2026). Indeed, *Buenrostro-Mendez* only addressed a statutory claim based upon varying interpretations of 8 U.S.C. § 1225 versus § 1226. *See* 2026 WL 323330, at *1. It did not address and does not preclude consideration of constitutional and other claims asserted by petitioners seeking relief from alleged unlawful detention.

This conclusion is bolstered by the oral argument in *Buenrostro-Mendez* in which counsel for the Government identified a single issue before the panel—"the statutory question . . . . There's not . . . a due process claim here." *See* Oral Argument, *Buenrostro-Mendez v. Bondi*, No. 25-20496, 44:56-45:11 (5th Cir. Feb. 3, 2026) (available at https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3). This concession confirms that constitutional claims remained unaddressed.

The conclusion is further supported because the Fifth Circuit remanded the cases consolidated for appeal to the district courts "for further proceedings consistent with this opinion," not for dismissal. *See* 2026 WL 323330, at *10. Such further proceedings presumably will entail

---

[1] *But compare Buenrostro-Mendez*, 2026 WL 323330, at *3 (citing a November 26, 2025 decision of the Southern District of New York as citing 350 judicial decisions finding in favor of habeas petitioners on this issue) with *id*. at 3 n.2 (listing two counterexamples).

considering the due process claim that the district courts expressly declined to reach in the first instance. *Covarrubias v. Vergara*, No. 5:25-CV-112, 2025 WL 2950097, at *5 n.3 (S.D. Tex. Oct. 8, 2025); *Buenrostro-Mendez v. Bondi*, No. H-25-CV-3726, 2025 WL 2886346, at *3 n.4 (S.D. Tex. Oct. 7, 2025).

The El Paso Division of the Western District of Texas quickly dispelled any notion that *Buenrostro-Mendez* dictated denial of constitutional claims. "*Buenrostro-Mendez* has no bearing on" whether the Government is detaining noncitizen, habeas petitioners in violation of their "constitutional right to procedural due process." *Marceau v. Noem*, No. 3:26-CV-237-KC, 2026 WL 368953, at *2 (W.D. Tex. Feb. 9, 2026). "*Buenrostro-Mendez* does not change this case's outcome on procedural due process grounds." *Hassen v. Noem*, No. EP-26-CV-00048-DB, 2026 WL 446506, at *2 n.1 (W.D. Tex. Feb. 9, 2026).

In *Bonilla Conforme*, the El Paso Division directly confronted a Government argument that, despite prior grants of habeas relief on due process grounds, the court should nevertheless deny such claims because *Buenrostro-Mendez* found that *Zadvydas* "did not apply to detained aliens who received due process through removal proceedings." 2026 WL 381110, at *2 (citing *Buenrostro-Mendez*, 2026 WL 323330, at *9). The Government argument relatedly cites "several non-controlling district court decisions, in which due process claims were dismissed prior to *Buenrostro-Mendez*." *See id*. In fending off this argument, the court explained:

> Respondents' argument relies on the following language in the penultimate paragraph of the *Buenrostro-Mendez* decision: "The petitioners' fears about potential abuse of detention pending removal proceedings under Section 1225b2A are wholly speculative. In any event, *Zadvydas v. Davis*, 533 U.S. 678, 678 (2001), has no direct application to aliens who are detained and being given due process during removal proceedings." *Buenrostro-Mendez*, 2026 WL 323330, at *9 (citation omitted).

> In *Zadvydas*, the Supreme Court considered a challenge to the statute that permits the Government to detain aliens who are subject to final orders of removal. *Zadvydas*, 533 U.S. at 682. The Court held that such detention becomes unlawful once removal is no longer reasonably foreseeable because "[a] statute permitting

> indefinite detention of an alien would raise a serious constitutional problem." *Id*. at
> 699. *Zadvydas*, by its very terms, squarely applies to post-removal-period deten-
> tion. *See id*. But it "has no direct application" to people who are detained pending
> removal proceedings. *See Buenrostro-Mendez*, 2026 WL 323330, at *9. And the
> constitutional concerns of indefinite detention raised in the post-final-removal-or-
> der context are not equally present when removal proceedings remain pending and
> will eventually conclude. *See Zadvydas*, 533 U.S. at 697. The Fifth Circuit's reiter-
> ation of *Zadvydas*' general inapplicability to pre-final-removal-order-detention is
> not a ruling on the viability of any and all due process challenges to that detention.
> And this aside does not change the fact that the Fifth Circuit only decided the stat-
> utory question and did not adjudicate the petitioners' due process claims.

*Bonilla Conforme*, 2026 WL 381110, at *2. The El Paso court also noted that, because its "many

immigration habeas decisions finding due process violations have been based on the *Mathews v.*

*Edlridge* test and principles of procedural due process, not on *Zadvydas . . . Buenrostro-Mendez*

does not preclude [the petitioner's] procedural due process claim." *Id*.

Further, Petitioner contends that the *Buenrostro-Mendez* panel lacked the benefit of the

comprehensive discussion of all Constitutional, INA, and regulatory provisions relevant to an en-

compassing analysis of the 1225/1226 issue. *See* Reply at 6. Petitioner submits that many relevant

aspects "were either never raised or misunderstood." *Id*. at 5–6. And while Petitioner makes several

salient points, this Court has neither the time nor the inclination to delineate or belabor perceived

weaknesses in the *Buenrostro-Mendez* analysis.

At this point, *Buenrostro-Mendez* is binding precedent for the statutory interpretation and

interrelationship of § 1225 and § 1226 as set out in the decision. This Court is bound by that

interpretation. But *Buenrostro-Mendez* has not eliminated habeas jurisdiction, displaced constitu-

tional limits on immigration detention authority, or insulated unlawful custody from judicial re-

view. Nor did *Buenrostro-Mendez* address distinct claims based on (1) warrantless interior arrests

by ICE that invokes Fourth Amendment consideration; (2) re-detention after release that may im-

plicate a protected liberty interest under the Fifth Amendment; (3) procedural due process as to

detention without bond for noncitizens who have created a life in the United States; or (4) the

constitutionality of prolonged detention even if statutorily authorized.

For these reasons, although *Buenrostro-Mendez* precludes Petitioner's statutory claim based on § 1225 versus § 1226, the Court finds that *Buenrostro-Mendez* does not preclude this Court's consideration of constitutional claims raised in this habeas action.

## B. Earlier Due Process Cases

An earlier decision out of El Paso focused on the merits of the petitioner's procedural due process claim based on detention without an individualized bond hearing. *See Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 681–87 (W.D. Tex. 2025). In doing so, it rejected the Government's reliance on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020) by distinguishing the case in two important respects: (1) *Thuraissigiam* addressed removability or deportability rather than mandatory detention under 8 U.S.C. § 1225(b) and (2) the petitioner in *Thuraissigiam* did not have a significant presence in the United States, whereas the petitioner before the El Paso court lived in the United States for three years and "built a life here" after being "released on his own recognizance two days" following his initial detainment "shortly after entering the country." *See* 801 F. Supp. 3d at 681–85. In a nutshell, the court found that the petitioner could pursue his due process claim because the petitioner "challenge[d] his detention, not his deportability" and "because he was detained after years of presence in the United States, rather than on the threshold of initial entry." *Id*. at 685. The undersigned has specifically agreed with and essentially followed *Lopez-Arevelo*. *See Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7–10 (W.D. Tex. Oct. 21, 2025).

## C. Merits of Due Process Claim

With *Thuraissigiam* not posing an obstacle to the assertion of a due process claim, the Court turns to the merits of such a claim. Under the Due Process Clause of the Fifth Amendment, "[n]o person shall be deprived of life, liberty, or property, without due process of law." U.S. Const.

amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Further, the Supreme Court has long recognized "that the Fifth Amendment entitles aliens to due process of law" in the context of removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (sometimes referred to as *The Japanese Immigrant Case*)); *accord Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (per curiam).

"Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (addressing due process claim under the Fourteenth Amendment). "Given the undeniable 'textual parallel between the Fifth and Fourteenth Amendments' courts 'understandably construe[ ] 'due process of law' to mean the same thing under the Fifth and Fourteenth Amendments alike.'" *C.M. v. United States*, 672 F. Supp. 3d 288, 342 (W.D. Tex. 2023) (quoting *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 243 (5th Cir. 2022) (Ho, J., concurring)).

The circumstances and nature of a given case may affect various aspects of the due process analysis. The analysis may differ significantly depending on the location of a noncitizen's encounter with immigration authorities—whether at the border or in close proximity thereto versus within the interior of the United States. It may be affected on whether the noncitizen has had prior encounters with immigration authorities and, if so, whether the noncitizen had been granted some sort of release previously. Immigration authorities, moreover, may release a noncitizen from detention in several ways—through various forms of parole, an order of supervision, or even on the noncitizen's own recognizance. Whether or not re-detention is at issue, the life that the noncitizen

has built and developed within the United States impacts the due process analysis.

Once a noncitizen has been provided a pathway for release and entry into the United States subject to whatever terms are imposed, the release may create a cognizable liberty interest protected by the Fifth Amendment. *See*, *e.g.*, *Zhu v. Genalo*, 798 F. Supp. 3d 400, 408 (S.D.N.Y. 2025). Not only do criminal parolees have a liberty interest "that parole will be revoked only if [the parolee] fails to live up to the parole conditions," *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), but civil detention further limits the circumstances justifying detention without violating due process, *see Zadvydas*, 533 U.S. at 690.

Due process protection remains even if government authorities have discretion to revoke supervision. *Zhu*, 798 F. Supp. 3d at 408. Detention without notice or explanation as required by regulation likewise "involves Petitioner's protected interest in his continued liberty." *Id*. This differs from a challenge to the general discretionary authority that might be available to revoke the release. *Id*.

Further, even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have "established a life here—albeit without authorization," possess "a strong liberty interest in their freedom from detention." *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025). This is "consistent with the longstanding principle that due process applies to those who are present in the interior of the United States, regardless of their citizenship status." *Id*.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey*, 408 U.S. at 482. The flexibility of due process "calls for such procedural protections as the particular situation demands." *Id*. This "does not mean that judges are at large to apply it to any and all relationships." *Id*. Instead, the flexibility of due process lies "in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for

procedural safeguards call for the same kind of procedure." *Id.* Supreme Court cases "underscore the truism that due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). Thus, "identification of the specific dictates of due process generally requires consideration of three distinct factors." *See id.* at 335. As succinctly stated in *Mathews*, the three factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.*

Whether the Government has previously released an individual into the community and later seeks to re-detain that person, or whether the individual within the United States has simply established a life here, procedural due process requires an individualized assessment consistent with the framework articulated in *Mathews*. Courts addressing the merits of an asserted procedural due process claim apply the three-part *Mathews* test. *See*, *e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 685; *Hernandez-Fernandez*, 2025 WL 2976923, at *8–10.

In the immigration detention context involving noncitizens with a substantial presence in the United States who have not received any individualized assessment of flight risk or dangerousness, each of the three factors—affected private interest; risks of erroneous deprivation, including "the probable value, if any of additional or substitute procedural safeguards"; and the Government's interest—support finding that the noncitizen has been denied procedural due process. *See*, *e.g.*, *Martinez*, 2025 WL 2965859, at *4–5. Even in cases where there has been a re-detention of a non-citizen after such person had received or effectively received the individualized assessment of flight risk and dangerousness, courts may approach the circumstances the same, with the same

results from the *Mathews* test. *See*, *e.g.*, *Lopez-Arevelo*, 801 F. Supp. 3d at 674–75, 685–87 (addressing due process violation in context of a non-citizen who first encountered immigration authorities on the day of entry, applied for asylum and withholding of removal, and was released for three years before ICE arrested him after a hearing connected to his removal proceedings); *Hernandez-Fernandez*, 2025 WL 2976923, at *8–10 (addressing due process violation in context of a non-citizen who first encountered immigration authorities soon after entry, was released two days after entry on an Order of Release on Recognizance, and remained on release for three years before ICE arrested him at a routine check-in appointment). Notably, the re-detention context also presents a due process claim when the Government revokes release without notice or explanation. *See*, *e.g.*, *Zhu*, 798 F. Supp. 3d at 408.

There is no reason to overdo the analysis on the *Mathews* factors. No one can reasonably question that freedom from physical detention is one of the most sacred and elemental of liberty interests. Further, when a noncitizen was previously released, which in and of itself reflects a determination that the individual is neither a flight risk nor a danger to the community, there is "a very high risk of erroneous deprivation of liberty" absent an individualized custody determination. *Cruz-Reyes v. Bondi*, No. 5:26-CV-60, 2026 WL 332315, at *7 (S.D. Tex. Feb. 3, 2026). Similarly, a substantial risk of erroneous deprivation of liberty exists when detention without bond of a noncitizen who was arrested within the United States and lacks any prior release by immigration authorities, but who has established a life here in the United States. *See Martinez*, 2025 WL 2965859, at *4.

The Government attempts to counter any asserted due process claims in three equally unavailing ways. First, it argues that Petitioner is receiving or has received due process afforded through removal proceedings in immigration court. Relatedly, it argues that, in upholding the facial constitutionality of § 1225(b) the Supreme Court in *Thuraissigiam* found that applicants for

14

admission are entitled only to the protections set forth by the statute in the INA. Second, it argues that in *Buenrostro-Mendez*, the Fifth Circuit found that *Zadvydas* did not apply to detainees who received due process through removal proceedings. Third, district courts around the country have dismissed due process claims under similar facts. The above analysis of this Court, however, demonstrates the validity of the asserted due process claim. To the extent another district court has found otherwise, this Court respectfully disagrees.

Under the facts and circumstances of this case, the Court finds that Petitioner is entitled to habeas relief based upon her Fifth Amendment due process claim, her detention is unlawful, and habeas relief is proper.

**D. Other Matters**

Although Petitioner seeks attorney fees and invokes jurisdiction under 28 U.S.C. §§ 1331 and 2241, as well as the APA and other statutes, the Court treats the instant action solely as a habeas action under § 2241. Petitioner does not specifically seek any non-habeas relief and has not paid the required filing fee for any non-habeas claim. "The payment of the $5 habeas filing fee relegates this action to habeas relief only. One cannot pay the minimal habeas fee and pursue non-habeas relief." *Ndudzi v. Castro*, No. SA-20-CV-0492-JKP, 2020 WL 3317107, at *2 (W.D. Tex. June 18, 2020). Because fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, are not available in habeas corpus proceedings like this one, *see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), the Court denies any request for fees in this case.

Additionally, Petitioner has raised numerous arguments in her extensive briefing that has not garnered comment or consideration from the Court. This is not to indicate that any unaddressed argument of Petitioner lacks merit. It merely reflects the practical reality that the onslaught of habeas cases precludes addressing each argument that may have merit once the Court has already determined that habeas relief is warranted. Some cases may require consideration of additional

arguments not addressed herein, but this case does not. The Court has this luxury in cases warranting relief whereas the litigants do not.

### E. Remedy

Because the Court has found a constitutional violation, the next step is to determine an appropriate remedy for such violation. On similar facts, the Court previously granted habeas relief on a due process violation and thus ordered the Government either to provide "a bond hearing before an Immigration Judge, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, [Petitioner's] continued detention" or to release the petitioner "from custody, under reasonable conditions of supervision." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *11 (W.D. Tex. Oct. 21, 2025). "However, upon further consideration, the Court now joins other district courts across the country in finding that the significant violation of Petitioner's due process rights and other prudential concerns weigh in favor of ordering Petitioner's immediate release." *Cruz-Reyes v. Bondi*, No. 5:26-CV-60, 2026 WL 332315, at *5 (S.D. Tex. Feb. 3, 2026).

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). When the Court issued *Hernandez-Fernandez* in October 2025, courts were first beginning to see the influx of habeas cases challenging unlawful detention. Since that time, the flood gates of habeas have seemingly unleashed unending habeas challenges to the Government's detention of noncitizens. Recognizing that the Government contended that release was the only remedy in habeas, this Court joined others in ordering release of the noncitizen when it granted habeas relief in similar contexts, while not addressing due process concerns.

The Court, furthermore, "is persuaded to follow other district courts that have declined to order Respondents to conduct a bond hearing when Respondents maintain that 8 U.S.C. § 1226 is

inapplicable to Petitioner's detention." *Cruz-Reyes*, 2026 WL 332315, at *5. Moreover, "due process concerns weigh heavily in favor of granting immediate release." *Id.* at *6. When a noncitizen "has demonstrated a profound liberty interest in his [or her] freedom from civil detention and a concrete, ongoing deprivation of that liberty without any process provided by Respondents to justify his [or her] detention . . . immediate release is appropriate." *Id*.

The Court likewise agrees that bond hearings are "no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Id*. (omitting internal quotation marks while quoting *Gonzalez v. Joyce*, No. 25 Civ. 8250 (AT), 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025)). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez*, 2025 WL 2961626, at *5. Further in cases of re-detention of a noncitizen in violation of the Fifth Amendment, "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out." *Rodriguez-Acurio v. Almodovar*, ___ F. Supp. 3d ___, ___, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025).

The *Mathews* factors also favor release. "Petitioner's private interest in h[er] release from detention cannot be overstated." *Cruz-Reyes*, 2026 WL 332315, at *7. A "lack of any notice, opportunity for Petitioner to challenge h[er] detention, or individualized determination by DHS when [she] was detained under mandatory detention creates a very high risk of erroneous deprivation of liberty that cannot be mitigated through only a post-deprivation hearing." *Id*. As for the third factor, the Government continues to contend that Petitioner is not entitled to a bond hearing thus reducing

its interest in providing one. The Government, moreover, has "proffered no evidence showing that Petitioner is a flight risk or a danger to the community, *see id.*, or otherwise provided any viable indication that Petitioner is either a flight risk or a danger. Further, "the Government's interest in continuing to detain Petitioner is further diminished where, as here, the Petitioner has no criminal record and has significant ties—factors that bear directly on flight risk and dangerousness." *Id*. Under these circumstances, "an evaluation of the *Mathews* factors supports a finding that due process requires immediate release for Petitioner." *Id*.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). Given this ruling, the Court **MOOTS** Petitioner's Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (ECF No. 2). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Nohellia Longoria Mendoza from custody, under appropriate conditions of release, to a public place no later than **February 28, 2026.**

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of release as soon as practicable and no less than two hours before release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. Respondents shall **FILE** a Status report no later than **March 1, 2026**, confirming that Petitioner has been released. If counsel for Petitioner disagrees with any aspect of the filed Status Report, counsel may file a separate Status Report.

A final judgment will be issued separately.

**IT IS SO ORDERED this 26th day of February 2026.**

**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**

18